UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al., | No. C 12-1368 PJH (MEJ) |
| Plaintiffs, | **REPORT & RECOMMENDATION RE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | **(Docket No. 17)** |
| C & L COATINGS, INC., | |
| Defendant. | |

**INTRODUCTION**

Plaintiffs[1] are various trust funds that bring this action for damages for breach of a collective bargaining agreement entered into with C & L Coatings, Inc. ("Defendant"). Compl. ¶ 4, Dkt. No. 1. Pending before the Court is Plaintiffs' Motion for Default Judgment. Dkt. No. 17. In their Motion, Plaintiffs request that the Court enter an order granting entry of a default judgment for unpaid contributions, as well as interest, liquidated damages, and attorneys' fees and costs. Mot. at 2. On November 2, 2012, the Honorable Phyllis J. Hamilton, referred Plaintiffs' Motion to the undersigned to prepare a report and recommendation. Dkt. No. 22. Defendant has failed to respond to Plaintiffs' Motion. After consideration of Plaintiffs' Motion and supporting materials, and the controlling legal authorities, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion for

---

[1]The Plaintiffs are: The Board of Trustees, in their capacities as Trustees of the Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California. Compl. ¶ 2, Dkt. No. 1.

1   Default Judgment against Defendant, as set forth below.

2                              **BACKGROUND**

3          Plaintiffs are multi-employer employee benefit plans within the meaning of §§ 3(3) and 3(37)

4   of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(3) and 1002(37).

5   The Trustees of the Boards of Trustees are the administrators and named fiduciaries for the Laborers

6   Trust Funds.  *Id.*  The Trust Funds, established under Trust Agreements, consist of all employee

7   fringe benefit contributions that are to be made by employers pursuant to collective bargaining

8   agreements as well as all returns on contributions and any other property received or held by the

9   Trust Funds.

10         At all times relevant to this action, Defendant was an employer within the meaning of ERISA

11  section 3(5), 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the

12  meaning of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  At all

13  relevant times, Defendant operated a business in California consisting of concrete installation work.

14  During that time, Defendant was a party to a written collective bargaining agreement with the

15  Northern California Council of Laborers.  Defendant signed a Memorandum Agreement, by which it

16  agreed to accept and be bound by all the terms, provisions and conditions of the Laborers Master

17  Agreement and various Trust Agreements governing each of the Trust Funds (collectively, the

18  "Agreements").

19         The Agreements obligate Defendant to make regular and timely contributions at specified

20  hourly rates to the Trust Funds on behalf of all of those employees performing covered work.

21  Defendant is required to formally report to the Trust Funds the number of hours worked by, or paid

22  to, each employee performing covered work.  The Agreements provide that the Trust Funds may

23  conduct an audit of any and all records relevant to enforcement of the Agreements.  If Defendant does

24  not timely pay all contributions owed under the Agreements, Plaintiffs assess liquidated damages at a

25  flat fee of $150.00 per month, along with 1.5% monthly interest on all unpaid contributions.

26         During the period from June 2010 to July 2011, Defendant made several incomplete or late

27  payments.  Defendant submitted reports for the period of June 2010 through July 2011, showing that

28

UNITED STATES DISTRICT COURT
For the Northern District of California

it owed contributions to the Trust Funds in the amount of $200,261.22.  Once Plaintiffs discovered the past-due amounts, typically upon Defendant's submission of amended reports, Plaintiffs assessed a flat liquidated damages fee of $150.00 for each month.  Interest on past-due amounts accrues at 1.5% per month from the delinquency date until the amounts are paid in full.  For late payments from the 2010 to 2011 period, Plaintiffs seek $68,407.14 in interest and $1,950.00 in liquidated damages, as well as $33.37 in interest on amounts paid but paid late, totaling $70,390.51.

Plaintiffs also seek unpaid contributions, plus damages and interest, discovered in an audit of Defendant's records for the period of October 2009 through June 2011.  Plaintiffs' audit determined that Defendant owed additional unpaid contributions in the amount of $206,973.43.  Plaintiffs also assessed liquidated damages and interest for these unpaid contributions.  Plaintiffs seek $3,000.00 in liquidated damages and $113,677.38 in interest, totaling $116,677.38.

On March 19, 2012, Plaintiffs filed the present Complaint to recover delinquent contributions from Defendant under ERISA sections 502(a)(3) and (g)(2), 29 U.S.C. § 1132(a)(3), (g)(2). Plaintiffs also sought an additional audit of Defendant's books and records, an order compelling Defendant to pay contributions as required by the Agreements, and attorneys' fees and costs. Plaintiffs served the Complaint on Defendant by substitute service effective on April 2, 2012.  Dkt. No. 9.  The Clerk of Court entered default against Defendant in May 16, 2012.  Dkt. No. 11.

On November 11, 2012, Plaintiffs moved for default judgment against Defendant, seeking unpaid contributions in the amount of $407,234.65, liquidated damages and interest totaling $187,067.89, attorneys' fees and costs of $11,307.50 and $579.00 respectively, and an order compelling Defendant to pay further delinquent amounts which Plaintiffs might discover during a mandatory audit.  Dkt. No. 17.  Plaintiffs served Defendant with the Motion for Default Judgment by mail.  Dkt. No. 21.  Defendant did not respond to the Motion for Default Judgment.

## DISCUSSION

**A.    Legal Standard**

Federal Rule of Civil Procedure ("Rule") 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case.  "The district court's decision whether to enter default

3

1    judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In

2    determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following

3    factors for the court to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of

4    plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

5    action; (5) the possibility of dispute concerning material facts; (6) whether default was due to

6    excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring

7    decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Where a default

8    judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which

9    states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded

10   in the pleadings."  Upon entry of default, all factual allegations within the complaint are accepted as

11   true, except those allegations relating to the amount of damages.  *TeleVideo Sys., Inc. v. Heidenthal*,

12   826 F.2d 915, 917-18 (9th Cir. 1987).

**B.**      **Jurisdiction**

13

14          When entry of judgment is sought against a party who has failed to plead or otherwise defend,

15   a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the

16   parties.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The undersigned will therefore assess whether

17   the Court has subject matter jurisdiction over this action, whether personal jurisdiction exists over the

18   parties, and whether Plaintiffs effected proper service of process.

19          1.      Subject Matter Jurisdiction

20          In this action, Plaintiffs assert claims to enforce the term of their plans and to enforce

21   provisions of ERISA.  This is an action for damages for breach of the collective bargaining

22   agreement for recovery of unpaid trust fund contributions, for breach of fiduciary duty and for

23   injunctive relief.  Accordingly, Plaintiffs lawsuit is authorized as a federal cause of action pursuant to

24   ERISA, 29 U.S.C. § 1132(a).  Jurisdiction also exists pursuant to the LMRA § 301, 29 U.S.C. §

25   185(c).

26          2.      Personal Jurisdiction

27          As the party seeking to invoke this Court's jurisdiction, Plaintiffs bear the burden of

28

UNITED STATES DISTRICT COURT
For the Northern District of California

4

1  establishing that it has personal jurisdiction over Defendants. *Scott v. Breeland*, 792 F.2d 925, 927
2  (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).
3  Traditional bases for exercising personal jurisdiction require the defendant's physical presence,
4  domicile, or consent. *Gonzales v. Palo Alto Labs, Inc.*, 2010 WL 3930440, at *4 (N.D. Cal. Oct. 6,
5  2010); *Martin v. D-Wave Sys. Inc.*, 2009 WL 4572742, at *2 (N.D. Cal. Dec. 1, 2009). Here, the
6  Court may properly exercise personal jurisdiction over Defendant because it is a California
7  corporation that engages in business activities in the Northern District of California, and plan
8  contributions are due and payable in the County of San Francisco. Thus, Plaintiffs' claims arise out
9  of Defendant's business within the state and the Court may exercise personal jurisdiction over
10  Defendant. *Velez v. Enter. Protective Servs., Inc.*, 2011 WL 3443637, at *3 (N.D. Cal. Aug. 8, 2011).

11         3.    <u>Service of Process</u>

12        In addition to ensuring that jurisdiction exists, the Court must also "assess the adequacy of the
13  service of process on the party against whom default is requested." *United States v. Sundberg*, No.
14  C-09-4085, 2011 WL 3667458, at *3 (N.D. Cal. Aug. 22, 2011) (internal quotations omitted).
15  Pursuant to Rule 4(h)(1)(B), a domestic corporation may be served by delivering a copy of the
16  summons and complaint to an officer or authorized agent of the company. Fed. R. Civ. P. 4(h)(1)(B).
17  Here, Plaintiffs served Defendant on March 26, 2012, when copies of the Summons and Complaint
18  were delivered to Jeff Mosley, a Manager at C & L, and then mailed to Defendant's agent for service
19  of process, Frank Podstupka. Dkt. No. 9. Thus, Plaintiffs properly effected service of process.

20  **C.  *Eitel* Analysis**

21        Having found that the Court has jurisdiction over this action and that Plaintiffs properly
22  served Defendants, the undersigned turns to the *Eitel* factors.

23         1.    <u>Prejudice to the Plaintiffs</u>

24        Under the first *Eitel* factor, the Court must examine whether Plaintiffs will be prejudiced if the
25  Court denies their request for entry of default judgment. *Eitel*, 782 F.2d at 1471-72. Here, if the
26  Court were to deny their request, Plaintiffs would have no other avenue for recovery, and further
27  delay in securing a judgment would only increase the chances that Plaintiffs will be unable to recover

28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   the amounts owed.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

2   Absent a default judgment, there is a likelihood of prejudice to Plaintiffs; as the enforcement

3   provisions of ERISA reserve exclusive jurisdiction to this Court for claims such as this, denial of

4   Plaintiffs' motion would leave them without a remedy.  Therefore, the undersigned finds that this

5   factor weighs in favor of granting default judgment.

6        2.   The Merits of Plaintiffs' Substantive Claim and the Sufficiency of the Complaint

7        The second and third *Eitel* factors focus on the merits of Plaintiffs' substantive claim and the

8   sufficiency of the Complaint.  *Eitel*, 782 F.2d at 1471-72.  In order for these factors to weigh in their

9   favor, Plaintiffs must assert claims upon which they may recover.  *See PepsiCo*, 238 F. Supp. 2d at

10  1175.

11       *a.   Unpaid and Late Contributions*

12       Plaintiffs' claim is for unpaid contributions in violation of ERISA.  Section 515 of ERISA

13  provides:

14       Every employer who is obligated to make contributions to a multiemployer plan under
the terms of the plan or under the terms of a collectively bargained agreement shall, to the

15  extent not inconsistent with law, make such contributions in accordance with the terms
and conditions of such plan or such agreement.

16

17  29 U.S.C. § 1145.  Section 1145 creates a federal cause of action against employers who do not make

18  timely contributions to employee benefit plans, and ultimately allows plan fiduciaries to enforce

19  pre-existing obligations created under the collective bargaining agreement.  *Trs. of the Screen Actors*

20  *Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009)

21  (authorizing, *inter alia*, a plan fiduciary to bring a civil action to enforce a collective bargaining

22  agreement).  In order to successfully assert this claim, Plaintiffs must prove the following: (1) the

23  Trusts are multi-employer plans under 29 U.S.C. § 1002(37); (2) the collective bargaining agreement

24  obligated Defendants to make the employee benefit contributions; and (3) Defendants failed to make

25  the contribution payments pursuant to the collective bargaining agreement.  *Bd. of Trs. of the Sheet*

26  *Metal Workers Health Care Plan of N. Cal. v. Gervasio Envtl. Sys.*, 2004 WL 1465719, at *2 (N.D.

27  Cal. May 21, 2004).  In this case, Plaintiffs' Complaint and supporting materials allege facts

28

1   sufficient to prove the necessary elements.

2          As a threshold matter, Defendant must be deemed an employer before it is bound to comply

3   with § 1145.  *See* 29 U.S.C. § 1145.  An "employer" is defined as "any person acting directly as an

4   employer, or indirectly in the interest of an employer, in relation to an employee benefit plan, and

5   includes a group or association of employers acting for an employer in such capacity."  29 U.S.C. §

6   1002(5).  As stated above, Defendant is an employer within the meaning of Section 3(5) and Section

7   515 of ERISA, and an employer in an industry affecting commerce within the meaning of Section

8   301 of the LMRA.  Compl. ¶ 3.

9          The requirements of § 1145 make clear that an employer must be bound under a collective

10  bargaining agreement to make employee contributions to a multi-employer plan.  *Bd. of Trs. of the*

11  *Sheet Metal Workers v. Accu-Balance Assocs., Inc.*, 2006 WL 3591141, at *1-3 (N.D. Cal. Dec. 11,

12  2006).  Under ERISA, these plans are defined as employee benefit pension plans that are made

13  pursuant to a collective bargaining agreement and to which more than one employer contributes.  29

14  U.S.C. §§ 1002(3), (37).  According to Plaintiffs, the Trust Funds were set up as employee benefit

15  plans under ERISA and the LMRA.  Compl. ¶ 2.  Defendant's obligation to contribute to the benefit

16  plans arose out of the parties' Agreements.  Compl. ¶ 4.  Under the Agreements, Defendant was

17  obligated to make contributions to the Laborers Trust Funds based upon the number of hours worked

18  by their employees.  *Id*.  Plaintiffs allege that Defendant failed to make timely contribution payments

19  for the months of June 2010 through July 2011.  *Id*. ¶ 13.  Thus, pursuant to 29 U.S.C. § 1132(g)(2),

20  Plaintiffs are entitled to an award of the unpaid principal balance of the contributions.  Based on the

21  foregoing, the Court finds that the Plaintiffs have sufficiently stated a claim for violation of § 1145

22  against Defendants.

23                    b.    *Injunctive Relief*

24         Plaintiffs also seek a mandatory injunction under ERISA, which authorizes the Trust Funds to

25  audit the records of the employer so long as the audit is done in furtherance of a proper purpose.

26  Plaintiffs have alleged that Defendant is required to allow the Trust Funds access to its books and

27  records to determine the amount of trust fund contributions due and owing.  Compl. ¶ 18.  Under the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

parties' Agreements, Defendant is contractually obligated to submit to an audit of financial records by Plaintiffs. *Id.* ¶ 5. The right of employee benefit plans to enforce such power to audit is well established. *Central States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571-72 (1985). Plaintiffs are therefore entitled to an audit of Defendant's financial records.

Based on this analysis, the undersigned finds that factors two and three weigh in Plaintiffs' favor.

### 3.   The Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of Defendant's conduct. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

In their Motion, Plaintiffs seek the following: (1) that Defendant pay the sum of $407,234.65 in principal contributions owed to the Trust Funds; (2) Defendant pay the sum of $187,067.89 in liquidated damages and interest owed to the Trust Funds; (3) Defendant be required to submit to an audit by Plaintiff Trust Funds, and pay any amounts found due and owing as a result of that audit; and (4) Defendant pay Plaintiffs' attorneys' fees in the amount of $11,307.50 and costs of $579.00. Mot. at 5. As discussed above, this amount is authorized under the Agreement and is thus proportionate and appropriately tailored to Defendant's specific misconduct in failing to make timely contribution payments.[2] *See Bd. of Trs. of the Sheet Metal Workers*, 2006 WL 3591141, at *1. Additionally, the recommended judgment, as set forth below, is both reasonable and required both by the collective bargaining agreement and 29 U.S.C. § 1132. Thus, this factor weighs in favor of default judgment.

### 4.   Possibility of Dispute Concerning a Material Fact

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Upon entry of default, the defendant

---

[2]The specific amount of interest, liquidated damages, and attorneys' fees and costs is discussed in greater detail in Section E, below.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  is "deemed to have admitted all well-pleaded factual allegations" in the complaint.  *DirecTV, Inc. v.*

2  *Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)).  Here, Defendant was

3  given ample opportunity to respond to the Complaint and participate in the proceedings.  Plaintiffs

4  served Defendant on March 26, 2012, when copies of the Summons and Complaint were delivered to

5  Jeff Mosley, a manager at C & L, and then mailed to Defendant's agent for service of process, Frank

6  Podstupka.  Dkt. No. 9.  Thus, Plaintiffs properly effected service of process.  Further, given that

7  Defendant's obligations under the Master Agreement are clear and supporting materials have been

8  provided, the possibility for any factual disputes is unlikely.  Plaintiffs' claims for unpaid

9  contributions are based on Defendant's reporting of hours worked or based on an audit of

10  Defendant's records.  Thus, this factor weighs in favor of default judgment.

11        5.        Whether Default was Due to Excusable Neglect

12        The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiffs'

13  allegations was the result of excusable neglect.  *Eitel*, 782 F.2d at 1471-72.  Plaintiffs properly served

14  Defendant with the Summons and Complaint.  Dkt. No. 9.  Defendant made no appearance in this

15  matter and has not responded to Plaintiffs' Motion.  Consequently, there is nothing suggesting that

16  Defendant's failure to appear and litigate this matter is based on excusable neglect.  *Shanghai*

17  *Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper

18  service was not excusable neglect).  As such, this factor weighs in favor of granting default judgment.

19        6.        Strong Policy in Federal Rules for Deciding on the Merits

20        The last *Eitel* factor examines whether the policy of deciding a case based on the merits

21  precludes entry of default judgment.  *Eitel*, 782 F.2d at 1472.  In *Eitel*, the Ninth Circuit admonished

22  that "[c]ases should be decided on their merits whenever reasonably possible."  *Id*.  However, courts

23  have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing

24  alone, is not dispositive."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal quotation and citation

25  omitted).  Similarly, other courts have stated that default judgment is appropriate when a defendant

26  refuses to litigate a case.  *See, e.g.*, *Bd. of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4

27  (N.D. Cal. Jan. 8, 2010).  Here, given that Defendant has not participated in the proceedings, a

28

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1  decision on the merits would not otherwise be possible.  In situations such as this, Rule 55(b) allows

2  the court to grant default judgment.  Therefore, this factor weighs in Plaintiffs' favor.

3  **D.    Summary**

4        Based on the foregoing analysis, this Court finds that each of the *Eitel* factors weighs in favor

5  of granting default judgment.  The undersigned therefore **RECOMMENDS** that the Court **GRANT**

6  Plaintiffs' Motion and enter default judgment against Defendant.

7  **E.    Damages**

8        Having found default judgment appropriate, the undersigned turns to the issue of damages.

9  Under ERISA § 502(g), 29 U.S.C. § 1132(g), a plan fiduciary who prevails in a § 1145 claim is

10 entitled to: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to

11 the greater of interest on the unpaid contributions or liquidated damages as specified in the plan; (4)

12 reasonable attorneys' fees and costs; and (5) other appropriate legal or equitable relief.  *Bay Area*

13 *Painters & Tapers v. Brown*, 2007 WL 1302982, at *4 (N.D. Cal. May 3, 2007).  Here, Plaintiffs seek

14 the following damages and fees:

| **Damage Type** | **Amount** |
|---|---|
| Unpaid Contributions | $407,234.65 |
| Interest and Liquidated Damages on Unpaid Contributions | $187,067.89 |
| Attorneys' Fees and Costs | $11,886.50 |
| **Total** | **$606,189.04** |

21 Mot. at 5.  At this stage, Plaintiffs have the burden of proving their damages through testimony or

22 written affidavit.  *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222,

23 1226 (N.D. Cal. 2005).

24        1.    Unpaid Contributions

25        Pursuant to the parties' Agreements, Plaintiffs seek an award of unpaid contributions in the

26 amount of $407,234.65.  Mot. at 5.  In support of this amount, Plaintiffs submit the Declaration of

27 John J. Hagan, the Accounts Receivable Manager for the Laborers Funds Administrative Office of

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Northern California, Inc.  Dkt. No. 19.  As the Accounts Receivable Manager, Mr. Hagan monitors

2  the compliance of employers that are signatories to the collective bargaining agreements underlying

3  the Trust Funds – he oversees the records of the employer's enrollment under the collective

4  bargaining agreement, the employer's submission of monthly employer reports, and the employer's

5  payment of monthly fringe benefit contributions.  Hagan Decl. ¶ 2.  Mr. Hagan's Declaration

6  establishes that Defendant reported the hours worked by, or paid to, each of its employees, but failed

7  to remit the full payments due along with the Employer Reports of Contributions they submitted

8  detailing the amounts owed by them.  *Id.* ¶ 13; Ex. D.  Defendant currently owes $200,261.22 in

9  delinquent fringe benefit contributions.  *Id.*

10      Mr. Hagan's Declaration also establishes that Fund Office performed an audit for the period

11  October 2009 through June 2011, and found that Defendant failed to report and failed to pay

12  contributions due and owing for its covered employees for that period, in the amount of $206,973.43.

13  *Id.* ¶ 18; Ex. G (audit summary report).  The undersigned has reviewed the parties' Agreements and

14  audit summary report and finds that the calculations are accurate.  Accordingly, Plaintiffs have

15  sufficiently demonstrated they are entitled to $407,234.65 in unpaid contributions.

16      2.   Interest and Liquidated Damages on Unpaid Contributions

17      In addition, Plaintiffs seek interest and liquidated damages on all unpaid contributions, for a

18  total of $187,067.89.  Mot. at 5.  Section 1132(g)(2) permits a plan fiduciary to collect interest on all

19  delinquent contribution once they have prevailed on a § 1145 claim.  29 U.S.C. § 1132(g)(2).  The

20  "interest [rate] on unpaid contributions shall be determined by using the rate provided under the plan,

21  or if none, the rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).

22      As to liquidated damages, the Ninth Circuit has made clear that an award of liquidated

23  damages under § 1132(g)(2) is "mandatory and not discretionary."  *Operating Eng'rs Pension Trust*

24  *v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984).  A plaintiff is entitled to a

25  mandatory award under § 1132(g)(2) if the following requirements are met: (1) the employer must be

26  delinquent at the time the action is filed; (2) the district court must enter a judgment against the

27  employer; and (3) the plan must provide for such an award.  *Nw. Adm'rs, Inc. v. Albertson's, Inc.*,

28

11

UNITED STATES DISTRICT COURT
For the Northern District of California

1   104 F.3d 253, 257 (9th Cir. 1996).  Any liquidated damages provided in a trust agreement cannot be

2   in excess of 20% of the amount of unpaid contributions.  29 U.S.C. § 1132(g)(2)(C)(ii).

3       In this case, Plaintiffs have satisfied all three requirements for an award under § 1132(g)(2).

4   First, Plaintiffs have alleged that Defendant was delinquent in making its contractually obligated

5   payment contributions.  Compl. ¶ 13.  Mr. Hagan's Declaration also provides a breakdown of all

6   unpaid contributions for Defendant's employees.  Hagan Decl., Ex. D.  Second, the undersigned has

7   recommended above that the District Court enter default judgment against Defendant.  Third, the

8   Master Agreement authorizes the award of liquidated damages following an employer's default.

9   Compl. ¶ 5.

10      Here, the parties' Agreements provide that when contributions are not paid, or not paid

11  timely, liquidated damages are assessed at a flat fee of $150 per month, along with simple interest at

12  the rate of 1.5% per month, calculated as of the 25th of each proceeding month in which the amount

13  becomes due.  Hagan Decl. ¶¶ 10, 14.  Thus, Plaintiffs seek $70,357.14 on contributions that were

14  self-reported, but unpaid for the period of June 2010 through June 2011.  *Id.* ¶ 15, Ex. E.  In addition

15  to the months for which Defendant submitted unpaid reports, there were two instances – June and

16  July 2010 – where Defendant submitted partial payment, but after the payment was due.  *Id.* ¶ 15.

17  Defendant also submitted reports for these months that remain unpaid.  *Id.*  Because these reports

18  showed that the amounts were paid late, the Trust Funds assessed interest in the amount of $33.37

19  against the amounts that were paid late.  *Id.*  The Trust Funds did not assess a flat fee of $150.00 for

20  these months because they had already assessed a liquidated damage fee on the original report, which

21  remains unpaid.  *Id.*  Thus, only interest was assessed against the delinquent amounts contained on

22  the supplemental reports for these months.  *Id.* ¶ 15, Ex. F.

23      In addition, based upon the audit conducted pursuant to the parties' Agreements, the auditor

24  calculated that Defendant owed interest in the amount of $113,677.38 and liquidated damages in the

25  amount of $3,000.00, covering the period from October 2009 through June 2011, when Defendant

26  had failed to report and pay contributions in the amount of $206,973.43.  *Id.* ¶ 18, Ex. G.

27      Based on this analysis, the undersigned finds that Plaintiffs have met their burden of showing

28

1    entitlement to liquidated damages and interest.  The undersigned thus recommends that Plaintiffs be

2    awarded liquidated damages and interest in the amount of $187,067.89.

3           3.    Attorneys' Fees and Costs

4         Finally, Plaintiffs seek attorneys' fees in the amount of $11,307.50 and costs of $579.00

5    incurred in this action, for a total of $11,886.50.  Mot. at 5.  The parties' Agreements provide that if

6    an employer fails to abide by the terms of the agreement with regard to fringe benefit payment and

7    legal consultation is sought by the Board of Trustees, reasonable attorneys' fees, costs, and all other

8    expenses incurred in enforcing collection will be paid by the delinquent employer.  Hagan Decl. ¶¶

9    21, 22.  Based on this contractual authorization, Defendant should be liable for the reasonable cost of

10   attorneys' fees and costs incurred by the Trust Funds in seeking to collect the delinquencies and

11   compel the audit at issue.  *Kemner v. Dist. Council of Painting & Allied Trades No. 36*, 768 F.2d

12   1115, 1120 (9th Cir. 1985).  Further, plan fiduciaries who obtain a judgment on a § 1145 claim are

13   also entitled to "reasonable attorney's fees and costs of the action."  29 U.S.C. § 1132(g)(2).

14        Plaintiffs have submitted evidence indicating they incurred court costs, consisting of a

15   complaint filing fee in the amount of $350, messenger services totaling $45, service of the summons

16   and complaint at $180, and public records search charges of $4.00.  Brome Decl. ¶ 10, Dkt. No. 18.

17   As they appear reasonable, the undersigned recommends that the District Court award these costs.

18        Plaintiffs also seek $11,307.50 in attorneys' fees.  *Id.* ¶ 9.  Under ERISA § 1132(g)(2), fee

19   awards are mandatory; however, courts should consider the reasonableness of these fees.  *Kemmis v.*

20   *McGoldrick*, 706 F.2d 993, 997-98 (9th Cir. 1983) (stating that § 1132(g)(2) "now makes the award

21   of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund

22   contributions").  The Ninth Circuit has articulated five factors that should be considered in

23   determining reasonable attorney fees: (1) the degree of the opposing parties' culpability or bad faith;

24   (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against

25   the opposing parties would deter others from acting under similar circumstances; (4) whether the

26   parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to

27   resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties'

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1   positions.  *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).  These factors are

2   intended to guide the court in its discretion, but none of the factors are dispositive; any combination

3   can support an award of fees.  *Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co.*, 25

4   F.3d 743, 749 (9th Cir. 1994).

5          Here, the award of attorneys' fees would deter other employers from becoming delinquent on

6   employee contributions because fees can add greatly to the amount of unpaid contributions.  An

7   award of fees further encourages employers to be more diligent in their record keeping and prompt

8   with their payment.  Also, Plaintiffs' straightforward claims have been adequately supported and the

9   merits of their position are well-grounded.  Accordingly, the undersigned finds that the above factors

10  weigh in favor of awarding attorneys' fees to Plaintiffs.

11         Once fees under ERISA are awarded, the court must calculate the lodestar amount to assess

12  the reasonableness of attorneys' fees.  *Credit Managers Ass'n of S. Cal.*, 25 F.3d at 750.  The lodestar

13  amount is determined by "multiplying the number of hours reasonably expended on the litigation by a

14  reasonable hourly rate."  *Id.* (internal quotations omitted).  In awarding attorneys' fees, courts must

15  look to the prevailing market rates in the relevant community.  *Bell v. Clackamas Cnty.*, 341 F.3d

16  858, 860 (9th Cir. 2003).

17         In this case, Plaintiffs' counsel billed a total of 35.25 hours in connection with this suit.

18  Brome Decl. ¶ 4, Ex. A.  Barry Hinkle is a shareholder with the law firm of Weinberg, Roger &

19  Rosenfeld.  *Id.* ¶ 5.  Mr. Hinkle graduated from University of California at Hastings and was admitted

20  to the California Bar in 1976.  *Id.*  Mr. Hinkle has been with the firm for 27 years, specializing

21  exclusively in ERISA work, and has represented trust fund clients in Hawaii, Arizona, Nevada,

22  Alaska, and Northern California.  *Id.*  Mr. Hinkle's time was billed at the Shareholder Rate of

23  $345.00 per hour.  *Id.*

24         Concepción E. Lozano-Batista is a shareholder with the law firm.  *Id.* ¶ 6.  Ms.

25  Lozano-Batista earned a Bachelor of Arts degree in Political Science and Spanish Literature in May

26  1996 from UC Berkeley.  *Id.*  She graduated from the University of San Francisco School of Law in

27  May 2003 and was admitted to the Bar in December 2003.  *Id.*  Ms. Lozano-Batista has been with the

28

14

law firm since August 2004, working on a variety of ERISA matters, including collection work in state and federal courts on behalf of a number of trust fund clients, litigating and counseling on issues involving ERISA, trust fund collection, benefit denials, as well as general litigation work on numerous cases. *Id.* Her time was billed at the Shareholder Rate of $345.00 per hour. *Id.*

Daniel Brome is an associate with the law firm. *Id.* ¶ 7. He received his undergraduate degree from Princeton University in 2005 and his Juris Doctor from the University of California, Berkeley School of Law (Boalt Hall) in 2011. *Id.* He was admitted to the California Bar in December 2011, and joined the law firm in February 2012. *Id.* He works on a variety of ERISA matters, including collection work in state and federal courts on behalf of Trust Fund clients, litigating and counseling on issues involving ERISA, benefit denials, as well as general litigation and arbitration work. *Id.* His time is billed at the Trust Fund Associate rate of $290.00 per hour. *Id.*

Eleanor Natwick is a paralegal with the law firm. *Id.* ¶ 8. Ms. Natwick holds a Bachelor of Arts in English from Western Michigan University. *Id.* Ms. Natwick has been with the Law Firm for 32 years. *Id.* During the period of October 1980 to February 29, 2003, Ms. Natwick was an Accounting Clerk with the law firm, working within the accounting department; since March 1, 2003, Ms. Natwick was a Litigation Case Clerk. *Id.* Ms. Natwick earned her paralegal certificate from the University of California at Berkeley in June 2006. *Id.* On January 15, 2007, Ms. Natwick was promoted to the position of paralegal at the law firm. *Id.* Ms. Natwick's hourly billable time was billed at $145.00 per hour. *Id.*

a.      *Reasonableness of Hourly Billing Rate*

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Credit Managers Ass'n of S. Cal.*, 25 F.3d at 750. In doing so, the court must look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Generally, the relevant community is the forum where the district court sits. *Id.*

Here, Plaintiffs' claimed hourly rates range from $290 to $345 per hour. Brome Decl. ¶¶ 5-7. Plaintiffs' hourly rates are within the range found reasonable in ERISA actions by other judges in the

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Northern District.  *See, e.g., Bd. of Trs. Of the Laborers Health and Welfare Trust Fund v. Perez*,

2   2011 WL 6151506, at *14 (N.D. Cal. Nov. 7, 2011) (finding hourly rates of $325 and $345

3   reasonable in ERISA case).  After reviewing Plaintiffs' billing records and considering the

4   experience of counsel, the undersigned finds that the hourly rates are reasonable and consistent with

5   prevailing market rates in the Northern District.

6          *b.*    *Reasonableness of Hours Billed*

7        In order to assess whether the number of hours billed is reasonable, Plaintiffs must submit

8   detailed records justifying the hours that have been expended.  *Chalmers v. City of Los Angeles*, 796

9   F.2d 1205, 1210 (9th Cir. 1986).  The court may reduce the hours through its discretion "where

10  documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the

11  hours expended are deemed excessive or otherwise unnecessary."  *Id.*

12       In this case, Plaintiffs' counsel billed a total of 35.25 hours.  Brome Decl. ¶ 4.  After

13  reviewing the detailed billing records provided in Mr. Brome's Declaration, which offer a breakdown

14  of the work completed and the specific tasks performed, the undersigned finds that the hours billed

15  are reasonable.  The undersigned thus recommends that Plaintiffs be awarded attorneys' fees in the

16  amount of $10,147.50, which represents the total itemized fee in Mr. Brome's Declaration.

17       In addition, Plaintiffs' initial request also included "expected" fees in the amount of

18  $1,160.00, representing four hours of work billed at $290.00 per hour. *Id.* ¶ 9.  Plaintiffs state that:

19  "The unbilled work associated with Plaintiffs' Motion for Default Judgment is estimated at

20  approximately $1,160.00 and includes an appearance at the hearing on the motion for default

21  judgment and follow-up work regarding the judgment entered by the Court."  *Id.*  However, as

22  Defendant has failed to respond to Plaintiffs' Motion, the undersigned finds a hearing unnecessary.

23  Further, given Plaintiffs' failure to provide any legal authority for such an award, the undersigned is

24  disinclined to award fees for a generalized statement regarding potential future "follow-up work."

25  Thus, the undersigned recommends that the District Court not increase the fees award by $1,160.00.

26  Accordingly, the undersigned recommends that the District Court award Plaintiffs $10,147.50 in

27  attorneys' fees and $579.00 in costs, for a total of $10,726.50.

28

16

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**CONCLUSION**

Based on the above analysis, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion for Default Judgment enter default judgment against Defendant. Plaintiffs should be awarded:

(1) unpaid contributions in the amount of $407,234.65;

(2) interest and liquidated damages on the unpaid contributions in the amount of $187,067.89;

(3) attorneys' fees and costs in the amount of $10,726.50; and

(4) a mandatory injunction requiring Defendant to submit to an audit of its financial records by Plaintiffs for the period January 1, 2010 to the present.

The undersigned further **RECOMMENDS** that the District Court retain jurisdiction over the parties and the subject matter to enforce its mandatory injunction and to entertain a motion for a further money judgment, should the audit disclose amounts that may be owed by Defendant.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation within fourteen (14) days after being served.

**IT IS SO RECOMMENDED.**

Dated: December 18, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

17